No. 16-1305

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

ERIN DINDINGER, LISA LORING, and ELIZABETH FREUND,

Plaintiff-Appellee,

v.

ALLSTEEL INC.,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION
HONORABLE STEPHANIE M. ROSE

APPELLANT'S BRIEF

FRANK HARTY
FRANCES M. HAAS
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone: 515-283-3100
Facsimile: 515-283-8045
Email: fharty@nyemaster.com
fmhaas@nyemaster.com
ATTORNEYS FOR
DEFENDANT/APPELLANT

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Allsteel underwent significant changes to survive the 2008 economic crisis. It lost one-third of its workforce, refrained from filling empty positions, froze pay, and reorganized job functions. Plaintiffs, former managers at Allsteel, allege various pay discrimination claims against Allsteel that accrued during the economic crisis.

At trial, the District Court abused its discretion in multiple ways. First, it instructed the jury that Allsteel could not consider any economic factors in setting pay—even though Allsteel had completely reorganized its workforce and management structure in response to the economic crisis. Second, it admitted a significant amount of "me too" evidence from employees who worked in different departments, for different supervisors, performing different tasks than the Plaintiffs. Third, it refused to allow Allsteel to present evidence of its knowledge about the results of a governmental audit of its compensation practices to substantiate Allsteel's subjective belief that it was following federal equal pay laws. Fourth, the District Court admitted evidence of retaliatory animus by Allsteel when no retaliation claim was alleged. Following trial, the District Court abused its discretion in granting expansive attorney fees and costs to Plaintiffs.

The Court should grant Allsteel a new trial in this case. Allsteel requests 20 minutes for oral argument.

Appellate Case: 16-1305    Page: 2    Date Filed: 03/25/2016 Entry ID: 4382068

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant Allsteel Inc.'s parent corporation is HNI Corporation. HNI

Corporation is a publicly held corporation.

iii

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... ii

CORPORATE DISCLOSURE STATEMENT ....................................... iii

TABLE OF AUTHORITIES ......................................................... vii

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUES...................................................... 2

STATEMENT OF THE CASE......................................................... 4

A.      Statement of Relevant Facts ............................................. 4

        1.      The 2008 recession caused Allsteel to make significant
                changes to its operations. ...................................... 4

        2.      Prior to the 2008 recession, Plaintiffs and their male
                comparators worked in the MCR and Safety
                Departments........................................................ 5

        3.      Due to the recession, Allsteel eliminated the positions
                held by Plaintiffs' male comparators, McCullough and
                Allbee. ............................................................ 6

        4.      Due to a loss in personnel, Allsteel modified the job
                responsibilities for Safety Managers and MCR Managers
                and expected all employees to pitch in to help cover
                duties............................................................. 7

B.      Procedural History ........................................................ 9

C.      Ruling Presented for Review ........................................... 11

SUMMARY OF THE ARGUMENT ................................................. 12

ARGUMENT ........................................................................ 14

iv

I.    The District Court abused its discretion by instructing the jury that Allsteel could not rely on any "economic conditions," including "downsizing, reductions in force, restructuring, and economic downturns" as a "factor other than sex" in its affirmative defense to Plaintiffs' equal pay claims. ......................................14

      A.    Standard of review.................................................................14

      B.    Employers are entitled to an affirmative defense if a factor other than sex results in a pay disparity....................14

      C.    The EPA's broad interpretation of the "factor other than sex" defense includes economic and business conditions like downsizing, reductions in force, and restructuring. .....................16

      D.    The erroneous instruction that prohibited the jury from considering the effects of the recession prejudiced Allsteel's defense on the EPA and section 216.6A claims. ...............21

II.   The District Court impaired Allsteel's substantial rights and abused its discretion when it permitted Plaintiffs to introduce testimony of former Allsteel employees' subjective pay complaints even though they had different supervisors, different jobs, different duties, and were assigned to different locations than Plaintiffs...................................................................................24

      A.    Standard of review.................................................................24

      B.    The District Court permitted Plaintiffs to introduce a great deal of irrelevant "me too" evidence..........................25

      C.    The "me too" evidence was unfairly prejudicial to Allsteel...................................................................................30

III.  The District Court's exclusion of evidence from Allsteel's human resources professionals and in-house counsel about their belief that Allsteel was in compliance with equal pay laws was unfairly prejudicial..........................................................................33

      A.    Standard of review.................................................................33

v

B.    Allsteel is subject to the oversight of the OFCCP, which examined Allsteel's compliance with federal employment law. ...................................................................................................34

C.    The Court prohibited Allsteel from introducing evidence of the OFCCP's conclusions on its pay practices and evidence of Allsteel's witnesses' understanding of the OFCCP's conclusions. .......................................................................36

IV.   Although Plaintiffs did not file a retaliation claim, the District Court abused its discretion by permitting Plaintiff Lisa Loring to introduce evidence that Allsteel's conduct toward her was motivated by a retaliatory animus. .................................................41

V.    The District Court abused its discretion when it granted nearly all of the fees Plaintiffs had requested despite Plaintiffs' limited success. ...........................................................................................44

VI.   The District Court abused its discretion when it granted Plaintiffs' motion for costs. ...........................................................50

CONCLUSION ...................................................................................................52

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A) .........................................................................................53

CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A.......54

CERTIFICATE OF FILING and service.............................................................55

vi

Appellate Case: 16-1305    Page: 6    Date Filed: 03/25/2016 Entry ID: 4382068

# TABLE OF AUTHORITIES

**Cases**

Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240 (11th Cir. 2014)................. 25, 33

Alaniz v. Zamora-Quezada, 591 F.3d 761 (5th Cir. 2009)............................. 25, 33

Andazola v. Logan's Roadhouse, Inc., No. CV-10-S-316, 2013 WL
    2355350 (N.D. Ala. May 24, 2013) ....................................................26

Arneson v. Callahan, 128 F.3d 1243 (8th Cir. 1997) ...............................48

Bauer v. Curators of Univ. of Mo., 680 F.3d 1043 (8th Cir. 2012)........................14

Blackburn v. Cypress Equities I, LP, No. 3:12-CV-5030-D, 2014 WL
    4771765 (N.D. Tex. Sept. 25, 2014) ....................................................19

Blair v. Wills, 420 F.3d 823 (8th Cir. 2005)............................................43

Blanchard v. Bergeron, 489 U.S. 87 (1989) ...........................................45

Boaz v. Fed. Express Corp., 107 F. Supp. 3d 861 (W.D. Tenn. 2015) ..................20

Bradford v. Norfolk S. Corp., 54 F.3d 1412 (8th Cir. 1995)...................................25

Brokaw v. Weiser Sec., 780 F. Supp. 2d 1233 (S.D. Ala. 2011) ...........................19

Callanan v. Runyun, 75 F.3d 1293 (8th Cir. 1996) ..................................25

Corning Glass Works v. Brennan, 417 U.S. 188 (1974) ................................ 16, 17

Davis v. Dunn Constr. Co., Inc., 872 F. Supp. 2d 1291 (N.D. Ala.
    2012)................................................................................28

Demers v. Adams Homes of Nw. Fla., Inc., 321 F. App'x 847 (11th
    Cir. 2009)...........................................................................25

Dindinger v. Allsteel, Inc., 860 N.W.2d 557 (Iowa 2015) .................. 45, 46, 47, 49

Dutcher v. Randall Foods, 546 N.W.2d 889 (Iowa 1996)........................................44

Appellate Case: 16-1305    Page: 7    Date Filed: 03/25/2016 Entry ID: 4382068

E.E.O.C. v. J.C. Penney Co., Inc., 843 F.2d 249 (6th Cir. 1988)............................20

E.E.O.C. v. CRST Van Expedited, Inc., No. 07-CV-95-LRR, 2010
    WL 520564 (N.D. Iowa Feb. 9, 2010) ........................................................51

Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988)..............................39

Farrar v. Hobby, 506 U.S. 103 (1992) ...................................................................45

Fish v. St. Cloud State Univ., 295 F.3d 849 (8th Cir. 2002) ..................................44

Flockhart v. Iowa Beef Processors, Inc., 192 F. Supp. 2d 947 (N.D.
    Iowa 2001)..................................................................................................20

Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261 (11th Cir.
    2008).................................................................................................. 24, 33

Hasan v. Foley & Lardner LLP, 552 F.3d 520 (7th Cir. 2008) ..............................24

Hensley v. Eckerhart, 461 U.S. 424 (1983) ......................................... 44, 45, 49, 50

Jackson v. United Parcel Serv., Inc., 593 F. App'x. 871 (11th Cir.
    2014)............................................................................................................25

Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)....................45

Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304 (8th Cir. 1984)........ 39, 40, 45

Jones v. St. Jude Med. S.C., Inc., 823 F. Supp. 2d 699 (S.D. Ohio
    2011)............................................................................................................28

Joyner v. Town of Elberta, 22 F. Supp. 3d 1201 (S.D. Ala. 2014) ........................19

Kienzle v. Gen. Motors, LLC, 903 F. Supp. 2d 532 (E.D. Mich. 2012) ................19

Leftwich v. Harris-Stowe State Coll., 702 F.2d 686 (8th Cir. 1983) .....................52

Mandel v. M & Q Packaging Corp., 706 F.3d 157 (3d Cir. 2013).........................24

McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737 (8th Cir.
    2010)............................................................................................................14

viii

Appellate Case: 16-1305     Page: 8     Date Filed: 03/25/2016 Entry ID: 4382068

McDowell v. Safeway Stores, Inc., 758 F.2d 1293 (8th Cir. 1985) ........................51

McIlveen v. Stone Container Corp., 910 F.2d 1581 (7th Cir. 1990) ......................51

McPheeters v. Black & Veatch Corp., 427 F.3d 1095 (8th Cir. 2005) ...................25

Nuskey v. Hochberg, 723 F. Supp. 2d 229 (D.D.C. 2010)......................................29

Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470 (9th Cir. 1992) ...............48

Plemer v. Parsons-Gilbane, 713 F.2d 1127 (5th Cir. 1983) ...................................38

Price v. N. States Power Co., 664 F.3d 1186 (8th Cir. 2011).................................20

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)...............................................39

Quigley v. Winter, 598 F.3d 938 (8th Cir. 2010) ...................................................24

Ratts v. Business Systems, Inc., 686 F. Supp. 546 (D.S.C. 1987) ........................18

Richmond v. Southwire Co., 980 F.2d 518 (8th Cir. 1992) ...................................50

Scott v. City of Sioux City, Iowa, 68 F. Supp. 3d 1022 (N.D. Iowa
    2014) ................................................................................................ 42, 43

Scott v. City of Sioux City, Iowa, No. C13-4064, 2015 WL 1567253
    (N.D. Iowa Apr. 6, 2015) .......................................................................43

Sellers v. Peters, 624 F. Supp. 2d 1064 (E.D. Mo. 2008)......................................48

Sloan v. Motorists Mut. Ins. Co., 368 F.3d 853 (8th Cir. 2004) ...........................22

Spring/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379 (2008)................ 24, 30, 33

Taylor v. White, 321 F.3d 710 (8th Cir. 2003)................................................ 17, 18

UnitedHealth Group Inc. Shareholder Derivative Litig., 631 F.3d 913
    (8th Cir. 2011) .......................................................................................52

Watkins v. Fordice, 852 F. Supp. 542 (S.D. Miss. 1994).......................................48

Appellate Case: 16-1305    Page: 9    Date Filed: 03/25/2016 Entry ID: 4382068

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,
    254 F.3d 706 (8th Cir. 2001) .......................................................... 33, 34

Wood v. Tech. for Energy Corp., No. 3:14-CV-115, 2015 WL
    2341084 (E.D. Tenn. May 14, 2015) .................................................18

**Statutes**

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

28 U.S.C. § 1920 ...........................................................................50

29 U.S.C. § 206(d) ...........................................................................1

29 U.S.C. § 206(d)(1)......................................................................14

42 U.S.C. § 2000e .............................................................................1

Iowa Code section 216.15(13) .......................................................47

Iowa Code section 216.6........................................................... 46, 47

Iowa Code section 216.6A ....................................................... passim

Iowa Code section 216.6A(2)(b)....................................................49

Iowa Code section 216.6A(3)(d).....................................................15

**Rules**

Fed. R. Evid. 401 ...................................................................... 30, 36

Fed. R. Evid. 402 ...................................................................... 34, 39

Fed. R. Evid. 403 ...........................................................................33

x

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs brought claims under the federal Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

The District Court filed its Order Denying Allsteel's Motion for New Trial on January 4, 2016, affirming the jury's verdict and Judgment entered on August 7, 2015. Allsteel timely filed a Notice of Appeal on February 2, 2016.

Allsteel's appeal is from a final order that disposed of all parties' claims.

Appellate Case: 16-1305     Page: 11     Date Filed: 03/25/2016 Entry ID: 4382068

## STATEMENT OF THE ISSUES

I.   Whether the District Court abused its discretion by instructing the jury that Allsteel could not rely on any "economic conditions," including "downsizing, reductions in force, restructuring, and economic downturns" as a "factor other than sex" in its affirmative defense to Plaintiffs' Equal Pay Claims?

Boaz v. Fed. Express Corp., 107 F. Supp. 3d 861 (W.D. Tenn. 2015)

E.E.O.C. v. J.C. Penney Co., Inc., 843 F.2d 249 (6th Cir. 1988)

Flockhart v. Iowa Beef Processors, Inc., 192 F. Supp. 2d 947 (N.D. Iowa 2001)

Taylor v. White, 321 F.3d 710 (8th Cir. 2003)

II.   Whether the District Court impaired Allsteel's substantial rights and abused its discretion when it permitted Plaintiffs to introduce testimony of former Allsteel employees' subjective pay complaints even though they had different supervisors, different jobs, different duties, and were assigned to different locations than Plaintiffs?

Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240 (11th Cir. 2014)

Alaniz v. Zamora-Quezada, 591 F.3d 761 (5th Cir. 2009)

Mandel v. M & Q Packaging Corp., 706 F.3d 157 (3d Cir. 2013)

Spring/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379 (2008)

III.   Whether the District Court's exclusion of evidence from Allsteel's human resources professionals and in-house counsel about their belief that Allsteel was in compliance with equal pay laws was unfairly prejudicial?

Plemer v. Parsons-Gilbane, 713 F.2d 1127 (5th Cir. 1983)

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706 (8th Cir. 2001)

2

IV.      Whether the District Court abused its discretion by permitting Plaintiff Lisa Loring to introduce evidence that Allsteel's conduct toward her was motivated by a retaliatory animus, where none of the Plaintiffs filed a retaliation claim against Allsteel?

     Blair v. Wills, 420 F.3d 823 (8th Cir. 2005)

     Scott v. City of Sioux City, Iowa, 68 F. Supp. 3d 1022 (N.D. Iowa 2014)

     Scott v. City of Sioux City, Iowa, 2015 WL 1567253 (N.D. Iowa Apr. 6, 2015)

V.      Whether the District Court abused its discretion when it granted nearly all of the fees Plaintiffs requested despite Plaintiffs' limited success?

     Arneson v. Callahan, 128 F.3d 1243 (8th Cir. 1997)

     Farrar v. Hobby, 506 U.S. 103 (1992)

     Hensley v. Eckerhart, 461 U.S. 424 (1983)

     Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)

VI.      Whether the District Court abused its discretion when it granted Plaintiffs' motion for costs?

     E.E.O.C. v. CRST Van Expedited, Inc., No. 07-CV-95-LRR, 2010 WL 520564 (N.D. Iowa Feb. 9, 2010), *vacated on other grounds*, 679 F.3d 657 (8th Cir. 2012)

     Leftwich v. Harris-Stowe State Coll., 702 F.2d 686 (8th Cir. 1983)

     McDowell v. Safeway Stores, Inc., 758 F.2d 1293 (8th Cir. 1985)

3

## STATEMENT OF THE CASE

**A.     Statement of Relevant Facts**

>   1.    <u>The 2008 recession caused Allsteel to make significant changes to its operations.</u>

Like most employers in the United States, Allsteel, an office furniture manufacturer, acutely felt the effects of the 2008 recession. <u>See</u> JA 624-625. Allsteel's corporate witness, Kevin Skarich, testified that the recession "was a terrible time . . . a very difficult time" for Allsteel. <u>Id.</u> In his words, the recession "caused [Allsteel] to thinking differently, it caused us to work and manage differently, it was a different landscape." <u>Id.</u>

To survive the effects of the 2008 recession, Allsteel was forced to implement a number of extreme cost-saving measures. JA 625. Prior to the recession, Allsteel had approximately 1300 employees, whom Allsteel refers to as "members." <u>See</u> JA 624-625. Due to the drop in customer orders during the recession, Allsteel was forced to implement five separate waves of lay-offs, which resulted in the elimination of about one out of every three positions. JA 606; 624-631; 649; 693-694; 935. Additionally, from 2009-2010, Allsteel froze all merit raises (performance-based salary increases) and equity raises (salary increases given after comparing work among an employee's peers). JA 626; 1002; 1004; 1157.

Appellate Case: 16-1305     Page: 14     Date Filed: 03/25/2016 Entry ID: 4382068

Plaintiffs-Appellees ("Plaintiffs") worked for Allsteel during the recession. See JA 1299. Plaintiffs contend that, from October 11, 2008 (or around the beginning of the recession) and continuing through their respective resignation dates, Allsteel violated various pay discrimination laws.[1] See id.

> 2. Prior to the 2008 recession, Plaintiffs and their male comparators worked in the MCR and Safety Departments.

Allsteel's manufacturing operations include: (1) the Component Plant, which makes products such as work surfaces; (2) the Panel Plant, which makes office workstations; and (3) the Distribution Center, which distributes and packs finished product for shipment to customers. JA 649-650. Allsteel treats each operating area as an individual manufacturing location. Id.

Allsteel's Safety Department was responsible for member safety and environmental compliance. JA 556. Plaintiffs Erin Dindinger and Lisa Loring worked in Allsteel's Safety Department as Safety Managers. JA 553-554; 576; 578. Dindinger was assigned to the Panel Plant and reported to the Panel Plant's general manager. JA 564-565. Loring was assigned to the Component Plant and, prior to the recession, reported to Don McCullough, a male Safety Manager at the Component Plant. JA 576; 595.

---

[1] Plaintiff Erin Dindinger resigned on May 20, 2011, Plaintiff Lisa Loring resigned on November 1, 2013, and Plaintiff Elizabeth Freund resigned on December 3, 2009.  JA 1299.

Appellate Case: 16-1305     Page: 15     Date Filed: 03/25/2016 Entry ID: 4382068

Dindinger and Loring identified McCullough as their key male comparator in their pay discrimination claims. See JA 578-579; 823-824. Dindinger and Loring believe that, from October 11, 2008 through their respective resignation dates, Allsteel should have paid them the same salary that McCullough made or would have made. JA 413-426; 1093; 1299.

Allsteel's Member and Community Relations ("MCR") Department was responsible for Allsteel's human resources function. JA 547 & 610. Plaintiff Elizabeth Freund worked in the MCR Department as an MCR Manager. JA 624-625. Prior to the 2008 recession, Freund was assigned to the Distribution Center and reported to the plant manager for the Distribution Center. JA 625. Freund identified Michael Allbee, a male MCR Manager at the Component Plant, as her male comparator. JA 624-625. Freund alleged that from October 11, 2008 through the date of her resignation, Allsteel should have paid her the same as Allbee. Id.; JA 413-426; 738-740; 1299.

      3.     Due to the recession, Allsteel eliminated the positions held by Plaintiffs' male comparators, McCullough and Allbee.

Multiple Allsteel witnesses testified that, through the reduction in force, Allsteel eliminated the Safety Manager position held by McCullough and the MCR Manager position held by Allbee following their resignations in 2009. See JA 578; 580; 624-625; 978; 986; 1061; 1225. Skarich testified that Allsteel chose to

6

eliminate these vacant positions rather than fill them because it "save[d] someone else's job," which was crucial during the recession. JA 580.

Allsteel eliminated other positions in the Safety and MCR Departments: the safety technician position held by Joel Wessels (who reported to McCullough) in the Component Plant, JA 949; 980, and the MCR Generalist position held by Taryn Keppy. JA 625. This impacted job responsibilities for the remaining MCR and Safety staff.

4.    <u>Due to a loss in personnel, Allsteel modified the job responsibilities for Safety Managers and MCR Managers and expected all employees to pitch in to help cover duties.</u>

Allsteel witnesses testified that the recession led to a substantial change in job responsibilities for employees in the Safety and MCR Departments because "the landscape had changed and required people to do things differently." <u>See</u> JA 710; 981. For example, they testified that safety duties in the Component Plant, which were handled by the Safety team of Loring, McCullough, and Wessels prior to the recession, were not exclusively assigned to the remaining Safety Manager, Loring. <u>Id.</u> Rather, members outside the Safety Department, such as factory managers, group leaders, safety teams from across the plant, and paint technicians, assisted with safety duties in the Component Plant. <u>Id.</u> In other words, Allsteel witnesses testified that Loring's characterization that she "replaced" McCullough after he resigned is inaccurate due to the post-recession landscape. JA 978; 986.

Appellate Case: 16-1305    Page: 17    Date Filed: 03/25/2016 Entry ID: 4382068

Allsteel witnesses also testified that the duties and responsibilities of all Safety Managers (including Loring and Dindinger) were markedly different after the recession (and after McCullough's resignation) due to the reduced number of members. JA 606; 978. For example, there was substantially less safety training required because there were no new members to train. JA 978; 1003. And, the reduction in product orders also substantially diminished environmental reporting requirements. JA 980. The smaller workforce also reduced the number of workers' compensation claims Safety Managers had to oversee. JA 694.

The parties introduced evidence of a similar shift in the MCR Department following the reduction in force. Skarich testified that following the loss of two MCR positions (Allbee's and Keppy's), he had to fundamentally restructure MCR responsibilities, including duties for the Component Plant. JA 625; 691. Skarich testified that he split the MCR Manager duties Allbee had in the Component Plant among Freund and other MCR staff who remained after the reduction in force. JA 624-625; 690; 1624-1626. For example, prior to Allbee's resignation, Allbee had responsibility for the Component Plant's Flex and Paint factories. JA 573; 928-929. Freund admitted that she didn't have responsibilities for these factories after the restructuring. JA 753. Freund also testified that due to the restructuring, she held MCR responsibilities for functions that Allbee did not, such as skilled trades. JA

Appellate Case: 16-1305     Page: 18     Date Filed: 03/25/2016 Entry ID: 4382068

703; 753. In other words, Allsteel presented evidence that due to the reduction in force, Freund didn't "transfer" to Allbee's position. JA 624.

And, Allsteel introduced evidence that the reduced and rapidly changing number of members substantially affected the duties and responsibilities of MCR Managers. Skarich and former MCR Generalist Arnie Maldanado testified that following the elimination of Allbee and Keppy's positions in the MCR Department, Allsteel employed an "all-hands-on-deck" philosophy. JA 578; 935. This meant that MCR staff helped cover each other's duties in the various facilities. Id.; JA 776; 935.

Additionally, Skarich testified the reduction-in-force changed the amount of effort required by MCR Managers. JA 693. Fewer members led to fewer relationships for MCR Managers to manage, fewer member human resources issues, less work for recruiting, and less training. JA 693-694; 752. Freund also conceded that the reduction in MCR staffing affected both her workload and that of her co-workers. JA 733-734.

### B.    Procedural History

On October 13, 2011, Plaintiffs filed suit in the United States District Court for the Southern District of Iowa. JA 1-6. From July 27-31, 2015, the District Court held a jury trial before the Honorable Stephanie Rose. JA 1288. On July 31, 2015, the District Court submitted the following claims to the jury: (1) Plaintiffs' wage

9

discrimination claims under the Equal Pay Act ("EPA"); (2) Dindinger and Loring's wage discrimination claims under Iowa Code section 216.6A; (3) Dindinger and Loring's wage discrimination claims under Title VII; and (4) Loring's failure-to-promote claims under Title VII and Iowa Code section 216.6. JA 371-412.

On August 3, 2015, the jury returned a verdict that found for Plaintiffs on their EPA claims. JA 413-426. The jury found for Dindinger and Loring on their Iowa Code section 216.6A wage discrimination claims and Title VII wage discrimination claims. Id. The jury also found that Allsteel had willfully violated the EPA with respect to all Plaintiffs, and had willfully violated Iowa Code section 216.6A with respect to Dindinger and Loring. Id. The jury awarded Dindinger and Loring punitive damages for their Title VII wage discrimination claims. Id. The jury returned a verdict in favor of Allsteel on Loring's failure-to-promote claims. Id. On August 7, 2015, following an order from the District Court, the Clerk of Court entered judgment consistent with the verdict. JA 427-433.

On August 12, 2015, Plaintiffs moved for an award of attorney fees, JA 434, taxation of costs, JA 444, and filed a Bill of Costs, JA 441. Allsteel filed responses. JA 448; 456. On September 2, 2015, the Clerk of Court entered a taxation of costs for Plaintiffs. JA 465-467. On September 9, 2015, Plaintiffs moved for further review of the taxation of costs. JA 1281.

Appellate Case: 16-1305    Page: 20    Date Filed: 03/25/2016 Entry ID: 4382068

## C.     Ruling Presented for Review

On September 4, 2015, Allsteel moved for a new trial. JA 468-542.  First,
Allsteel argued the District Court committed legal error when it instructed the jury
that "economic conditions" do not constitute a "factor other than sex" for purposes
of Allsteel's affirmative defenses under the EPA and Iowa Code section 216.6A. Id.
Second, Allsteel argued the Court erred by permitting Plaintiffs to present virtually
limitless "me too" evidence of perceived pay disparities by witnesses who had no
relationship to Plaintiffs' wage discrimination claims. Id. Third, Allsteel argued the
Court erred by excluding all evidence of the conclusions reached following an
audit of Allsteel's pay practices by the Office of Federal Contract Compliance
Programs ("OFCCP") and Allsteel's knowledge of and reliance on those
conclusions. Id. Fourth, Allsteel argued the District Court erred by admitting
irrelevant and unfairly prejudicial evidence of alleged retaliation by Plaintiffs. Id.[2]

On January 4, 2016, the District Court entered an order that denied Allsteel's
motion for new trial. Add. 1-55. In the same order, the District Court granted
Plaintiffs' motion for attorney fees, motion for costs, and application for further
review of taxation of costs. Id.

---

[2] In this appeal, Allsteel does not pursue its fifth argument for new trial related to
juror communications.

11

## SUMMARY OF THE ARGUMENT

A new trial should be granted because of the District Court's repeated abuse of discretion and the resulting significant prejudice to Allsteel.

The District Court improperly misstated the law when it instructed the jury that Allsteel could not rely on any economic factors in setting pay for its employees. This instruction prevented the jury from considering the impact of Allsteel's workforce reduction, the elimination of comparator positions, departmental restructuring, changed job responsibilities, and pay freezes during the 2008 economic crisis. Allsteel was prejudiced by this instruction, because it essentially nullified Allsteel's affirmative defense that a "factor other than sex" was used to determine Plaintiffs' pay.

The District Court abused its discretion when it allowed Plaintiffs to submit extensive "me too" evidence from employees who worked at different times, for different supervisors, and in different positions from Plaintiffs. This evidence included testimony from non-parties about their subjective pay equity concerns at Allsteel, as well as a former employee's discussion of a prior lawsuit against Allsteel. None of this evidence was relevant to the pay decisions in this case, and all of it was highly prejudicial to Allsteel.

In keeping with its evidentiary rulings against Allsteel, the District Court refused to allow Allsteel's witnesses to testify to their reliance on the results of a

12

government audit of Allsteel's pay practices to substantiate Allsteel's defense that it subjectively believed it was properly following all federal equal pay laws. The District Court thought this evidence—which Allsteel sought to use to rebut Plaintiffs' claims of intentional violation and willful disregard of all pay laws—would be confusing and unduly prejudicial. Any confusion could easily have been addressed by a jury instruction, and any prejudice did not substantially outweigh the highly probative nature of this evidence. This was an abuse of discretion.

The District Court then allowed Plaintiffs to present evidence of Allsteel's alleged retaliatory animus, when none of the Plaintiffs had alleged a claim of retaliation. This was an abuse of discretion. It prejudiced Allsteel by forcing it to defend against a claim never alleged by the parties. And, it allowed the jury to decide against Allsteel on an improper basis.

The District Court further abused its discretion after trial by awarding expansive attorney fees and costs to Plaintiffs. The District Court refused to reduce the attorney fee award associated with Plaintiffs' time-barred claims and work on certified questions of law to the Iowa Supreme Court, for which Plaintiffs were not a prevailing party. Additionally, Loring and Dindinger recovered only six percent of their requested damages, and the District Court failed to consider this in determining the appropriate attorney fee award. Finally, the District Court

13

improperly granted costs to Plaintiffs for RealTime trial transcript fees, written and electronic depositions for the same witnesses, and Westlaw expenses.

This Court should reverse and remand for a new trial.

## ARGUMENT

I.   **The District Court abused its discretion by instructing the jury that Allsteel could not rely on any "economic conditions," including "downsizing, reductions in force, restructuring, and economic downturns" as a "factor other than sex" in its affirmative defense to Plaintiffs' equal pay claims.**

A.   **Standard of review.**

"Generally, this court reviews a district court's instructions to the jury for abuse of discretion." Bauer v. Curators of Univ. of Mo., 680 F.3d 1043, 1044 (8th Cir. 2012) (citation omitted). The jury instructions must, "taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010) (internal quotation marks and citation omitted).

B.   **Employers are entitled to an affirmative defense if a factor other than sex results in a pay disparity.**

The EPA generally requires employers to pay males and females the same for equal work. See 29 U.S.C. § 206(d)(1). An employer may not be held liable if it proves one of several affirmative defenses. Id. One affirmative defense allows an employer to pay different wages to men and women if the differential is "based on

14

any other factor other than sex." Id. at § 206(d)(1)(iv). Iowa Code section 216.6A, which mirrors the EPA, likewise provides a defense where a pay differential is "based on any other factor other than" a protected characteristic. Iowa Code § 216.6A(3)(d).

The District Court instructed the jury on this affirmative defense for Plaintiffs' EPA claims as follows:

> Allsteel cannot rely upon market forces or economic conditions as a factor other than sex to justify any pay differential complained of by [Plaintiff]. These market forces and economic conditions include downsizing, reductions in force, restructuring, and economic downturns. If the pay differential complained of by [Plaintiff] was based in any part upon her sex, market forces and economic conditions cannot justify perpetuation of that differential. It is not a defense under the Equal Pay Act that a woman may be paid less than a man in the same position simply because the woman is willing to accept less pay, or because the man demands more pay.

JA 377; Addendum at 55.[3] With respect to Allsteel's affirmative defense to Dindinger and Loring's claims under Iowa Code section 216.6A, the Court instructed the jury as follows: "Just as under the Equal Pay Act, market forces and economic conditions are not a defense under Section 216.6A of the Iowa Civil Rights Act." JA 379-380. No party had requested this particular instruction.

_____

[3] Instruction No. 4 specifically governed Dindinger's claims. However, the District Court incorporated these instructions into its marshalling instructions for Plaintiffs Loring and Freund. See JA 375-384 ("As noted earlier, Allsteel cannot rely upon market forces or economic conditions as a factor other than sex to justify any pay differential complained of by Lisa Loring."); JA 398-400 (same for Freund).

Appellate Case: 16-1305    Page: 25    Date Filed: 03/25/2016 Entry ID: 4382068

Allsteel objected to the instructions on that basis, and the Court made clear that it was treating "market forces" and "economic conditions" as one and the same:

> THE COURT:   What I am looking for is do you have anything that says economic conditions aren't market forces?  To me those are the same thing.

JA 1278. The District Court ultimately overruled Allsteel's objection, concluding its instruction was a "correct statement of the law." Id.

### C.   The EPA's broad interpretation of the "factor other than sex" defense includes economic and business conditions like downsizing, reductions in force, and restructuring.

At trial, and without any objection from Plaintiffs, Allsteel introduced evidence of a broad swath of economic factors that impacted Plaintiffs' pay. These factors included the complete reorganization of their departments following the loss of one-third of Allsteel's workforce, the decision to refrain from filling vacant positions and re-distribute duties to current employees, and the implementation of a company-wide pay freeze—all factors that existed as a result of the 2008 economic crisis.

The District Court reasoned Allsteel's proffered affirmative defense was inconsistent with the EPA's purpose because reliance on economic factors would not raise female employees' pay. Addendum at 9. In reaching this conclusion, the District Court relied on Corning Glass Works v. Brennan, 417 U.S. 188 (1974),

16

which held that an employer may not pay women less than men simply because women may be willing to work for lower wages. See id. at 205; Addendum at 7-9. The Eighth Circuit has recognized the specialized meaning of the "market forces" doctrine, cautioning that "it is important to ensure that employers do not rely on the prohibited 'market force theory' to justify lower wages for female employees simply because the market might bear such wages." Taylor v. White, 321 F.3d 710, 718 (8th Cir. 2003).

But, Corning Glass does not equate "market forces" with *any* "economic conditions," which the District Court prohibited the jury from considering. Indeed, no Eighth Circuit cases, Supreme Court cases, or district court cases within the Eighth Circuit support the District Court's instruction. As written, it is at odds with the plain language of the statute and the mandate to broadly construe this affirmative defense. This Court has emphasized the broad nature of the "factor other than sex" defense and refused to adopt a rule that an economic factor like a salary-retention policy or other legitimate business policy is per se unreasonable. Taylor, 321 F.3d at 718-20. This Court in Taylor reiterated the long-standing principle that courts "do not sit as a super-personnel department that re-examines an entity's business decisions," holding that it is therefore "reluctant to establish a per se rule that might chill the legitimate use of gender-neutral policies and procedures." Id. at 719 (internal quotation marks and citation omitted). The Court

17

held that "a case-by-case analysis of reliance on prior salary or salary retention policies with careful attention to alleged gender-biased practices preserves the business freedoms Congress intended to protect when it adopted the catch-all 'factor other than sex' affirmative defense." Id. at 720. The refusal to allow a salary retention policy to serve as a factor other than sex, without any factual analysis as to whether the policy is applied in a discriminatory fashion, was flatly rejected by this Court. Id.

Notably, courts have specifically approved of the use of economic conditions as a valid "factor other than sex" under the EPA. In Ratts v. Business Systems, Inc., 686 F. Supp. 546 (D.S.C. 1987), the employer justified a pay differential by noting that the company had lost significant revenue the prior year and had implemented a salary freeze. Id. at 552. The court held that this was a valid "factor other than sex" under the EPA:

> The failure of [the employer] to raise [the plaintiff's] salary after the acquisition was not based on her sex, but on *adverse economic conditions* at [the employer], the salary moratorium imposed equally upon all executives, and the feeling [plaintiff's] work was different from that of the others.

Id. (emphasis added). More recently, a district court observed that "an employer may consider market conditions *and the health of the company* when setting salaries." Wood v. Tech. for Energy Corp., No. 3:14-CV-115, 2015 WL 2341084, at *5 (E.D. Tenn. May 14, 2015) (emphasis added); see also Joyner v. Town of

18

Elberta, 22 F. Supp. 3d 1201, 1209 (S.D. Ala. 2014) ("A decline in revenue is also a sufficient affirmative defense under the EPA."). Another district court broadly recognized that a "pay differential based on an employer's *changed financial condition* can qualify as a factor other than sex." Blackburn v. Cypress Equities I, LP, No. 3:12-CV-5030-D, 2014 WL 4771765, at *7 (N.D. Tex. Sept. 25, 2014) (emphasis added) (collecting cases). "[S]o long as subjective business justifications . . . are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." Joyner, 22 F. Supp. 3d at 1207 (quotation omitted) (alterations in original) (recognizing that the comparator's prior pay and experience, the temporary nature of the claimant's position, and a change in the employer's revenue were all "factors other than sex" that could appropriately be asserted as affirmative defenses by the employer to a claim under the EPA).

Other decisions confirm economic conditions as a justification for a pay disparity. See, e.g., Kienzle v. Gen. Motors, LLC, 903 F. Supp. 2d 532, 546-47 (E.D. Mich. 2012) (noting fact issue as to whether employer's "economic pressures" explained pay differential); Brokaw v. Weiser Sec., 780 F. Supp. 2d 1233, 1252 (S.D. Ala. 2011) (holding that pay differential was based on factor other than sex where "the pay difference resulted from the decline in the Mobile branch's revenue during [the comparator's] employment"); Flockhart v. Iowa Beef

19

<u>Processors, Inc.</u>, 192 F. Supp. 2d 947, 972 (N.D. Iowa 2001) (Melloy, J.) (holding that "economic factors other than sex likely accounted for the wage difference").

In the Sixth Circuit, the "factor other than sex" defense includes "a factor that, at a minimum, was adopted for a legitimate business reason." <u>E.E.O.C. v. J.C. Penney Co., Inc.</u>, 843 F.2d 249, 253 (6th Cir. 1988). The factor asserted "must also be 'used reasonably in light of the employer's stated purpose." <u>Boaz v. Fed. Express Corp.</u>, 107 F. Supp. 3d 861, 881-82 (W.D. Tenn. 2015) (quoting <u>J.C. Penney</u>, 843 F.2d at 253). The Sixth Circuit has allowed as affirmative defenses to EPA claims the adoption of a new bona fide salary policy, the reclassification of a position—even if mistaken, long-term reorganization plans, new pay classification system implementation, and salary reconfiguration. <u>Id.</u> at 881-85 (collecting cases).

The District Court's insistence that a "factor other than sex" must raise the pay of female employees also ignores other gender-neutral reasons that are widely accepted and applied in these cases. For example, an employee's performance is a factor other than sex, and reliance on performance as a justification for pay disparity is appropriate even though it doesn't cause an employer to raise the wages of the under-earning plaintiff. <u>See</u> <u>Price v. N. States Power Co.</u>, 664 F.3d 1186, 1193-94 (8th Cir. 2011) (reasoning that any pay differential based on performance ratings and corresponding raises must be considered when assessing whether claimant prevails on EPA claim).

20

These cases demonstrate that the "market forces" doctrine does not prohibit an employer's ability to use economic conditions as a "factor other than sex."

### D. The erroneous instruction that prohibited the jury from considering the effects of the recession prejudiced Allsteel's defense on the EPA and section 216.6A claims.

The District Court reasoned that even if its jury instruction was incorrect, Allsteel was not prejudiced by it, writing:

> The jury awarded damages to Plaintiffs on their EPA claims from October 11, 2008, the earliest date for which damages could be awarded under the EPA, and through their respective end dates. In so awarding damages, the jury implicitly rejected Allsteel's affirmative defenses, including most importantly any that applied between October 11, 2008 and March 2009, when Allsteel implemented the pay freeze it cites as a factor excusing the pay differentials. The jury therefore found that Plaintiffs' sex was a part of the basis for the wage differential before the market downturn descended on Allsteel, meaning the market downturn was no justification for the pay differentials.

Addendum at 11-12.

There are two problems with the District Court's reasoning. First, the District Court focused exclusively on the merit pay freeze. See Addendum at 12. But, as Allsteel pointed out in its Motion for New Trial, the "economic conditions" the District Court prohibited the jury from considering included all effects of the recession—much more than just the merit pay freeze. See JA 468-542. The District Court appears to have understood this when it issued its final jury instructions,

21

because it stated the jury could not consider *any* economic factor, including

"downsizing, reductions in force, restructuring, and economic downturns." JA 377.

Allsteel introduced a great deal of evidence that the economic downturn caused the elimination of the positions held by the male comparators Plaintiffs identified, Allbee and McCullough, <u>see</u> JA 578; 580; 624-625; 978; 986; 1061; 1225, as well as other staffing reductions in the Safety and MCR Departments, <u>see</u> JA 625; 949. It also introduced evidence that due to the effect of the recession, Plaintiffs' departments, duties, and responsibilities were restructured. <u>Id.</u> Allsteel's witnesses testified that, as a consequence of the recession, the work Plaintiffs and their male comparators performed before the recession was different from the work Plaintiffs performed after the recession. JA 842-844; 922; 1158-1159. The jury should have been permitted to consider this evidence, which fundamentally impacted the pay decisions in question. <u>See id.</u>

Second, the District Court's reliance on the period of recovery confuses the jury's damages award with its finding of liability. The two cannot be conflated. The final jury instruction for the equal pay claims correctly states that the jury had to consider Allsteel's affirmative defense *before* it determined liability, willfulness, or damages on the EPA or section 216.6A claims. JA 375-381. Consequently, if the jury followed the instruction as they are presumed to do, <u>Sloan v. Motorists Mut. Ins. Co.</u>, 368 F.3d 853, 856 (8th Cir. 2004), the jury first examined the jury

Appellate Case: 16-1305     Page: 32     Date Filed: 03/25/2016 Entry ID: 4382068

instruction that erroneously forbade consideration of any economic factor to justify a disparity in pay, then turned to determine willfulness and damages. JA 375-381.

Examination of Dindinger's verdict form illustrates why this matters. Question 1(a) asks the jury whether it finds in Dindinger's favor or Allsteel's favor on the EPA claim. JA 413. At this point, presuming the jury followed the final jury instructions, it had already determined whether a factor other than sex justified the pay disparity in question. JA 375-381. The next question, 1(b), asks the jury to answer whether Allsteel willfully violated the EPA. JA 414. Only after this point—following consideration of liability and willfulness—did the jury consider damages and the recovery period relied on by the District Court. The verdict form states that if willfulness is found, "you should award damages based upon the wages Dindinger earned from October 11, **2008**, to May 20, 2011," and if no willfulness was found, damages should be awarded for "wages Dindinger earned from October 11, **2009**, to May 20, 2011." Id. (emphasis in original.)

This means that by the time the jury considered damages, it had already determined liability. In doing so, it was erroneously instructed to exclude consideration of any "economic conditions" to justify pay disparities. The District Court's reasoning that Allsteel was not prejudiced was clearly flawed.

23

**II. The District Court impaired Allsteel's substantial rights and abused its discretion when it permitted Plaintiffs to introduce testimony of former Allsteel employees' subjective pay complaints even though they had different supervisors, different jobs, different duties, and were assigned to different locations than Plaintiffs.**

**A.     Standard of review.**

"A district court's decision to admit or exclude testimony is reviewed for an abuse of discretion." Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010). The Supreme Court has recognized that the admissibility of "me too" evidence "is fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Spring/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008); see also Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167-68 (3d Cir. 2013); Hasan v. Foley & Lardner LLP, 552 F.3d 520, 529 (7th Cir. 2008). Mendelsohn instructs that the application of Rule 403 "to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." 522 U.S. at 388. Wholesale admission of "me too" evidence without any fact-based or context-specific inquiry is improper following Mendelsohn. See also Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286-87 (11th Cir. 2008) (undertaking a thorough analysis of the relationship between the "me too" evidence and the claims alleged by the plaintiffs to determine whether the "me too" evidence was admissible).

24

To be considered relevant, the alleged "me too" evidence "must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts." <u>Callanan v. Runyun</u>, 75 F.3d 1293, 1298 (8th Cir. 1996); <u>Bradford v. Norfolk S. Corp.</u>, 54 F.3d 1412, 1419 (8th Cir. 1995); <u>see also</u> <u>McPheeters v. Black & Veatch Corp.</u>, 427 F.3d 1095, 1101 (8th Cir. 2005).

"Me too" evidence may be admissible in cases where the claimant is attempting to prove the decision-maker had a discriminatory intent in making a particular decision, but it is crucial for courts to ensure that the persons providing "me too" evidence actually reported to the same decision-maker as the claimant. <u>See</u> <u>Adams v. Austal, U.S.A., L.L.C.</u>, 754 F.3d 1240, 1258 (11th Cir. 2014); <u>Jackson v. United Parcel Serv., Inc.</u>, 593 F. App'x. 871, 877 (11th Cir. 2014); <u>Demers v. Adams Homes of Nw. Fla., Inc.</u>, 321 F. App'x 847, 854 (11th Cir. 2009); <u>Alaniz v. Zamora-Quezada</u>, 591 F.3d 761, 774-75 (5th Cir. 2009).

The District Court did not serve its gate-keeping function to carefully consider and exclude prejudicial "me too" evidence.

**B.    The District Court permitted Plaintiffs to introduce a great deal of irrelevant "me too" evidence.**

Before trial, Allsteel moved to exclude so-called "me too" evidence. That is, evidence regarding individuals who subjectively believe—or, more accurately here, individuals who Plaintiffs believe—were also subjected to sex or pay discrimination. JA 172-174. The District Court refused to impose any limitations

25

on Plaintiffs' presentation of "me too" evidence. JA 312-315. The District Court did not, for example, restrict Plaintiffs' "me too" evidence to individuals who reported to the same supervisors, or held the same positions as Plaintiffs, or were temporally linked to Plaintiffs. It effectively made a blanket ruling allowing Plaintiffs to present any "me too" evidence they desired.

Plaintiffs embraced the District Court's expansive approach to "me too" evidence. For example, they introduced testimony from Margaret Bartenhagen, who retired from Allsteel in November 2008. JA 795. Bartenhagen's employment only overlapped with the relevant time period (Plaintiffs' recovery period beginning October 11, 2008) by a few weeks. This also means that the pay-setting decisions challenged during the recovery period were made by different supervisors. See JA 416. At the time she retired, Bartenhagen was a factory manager. JA 791-795. She never held the positions of Safety Manager or MCR Manager—the positions held by Plaintiffs. JA 803. She had no supervisory role over Plaintiffs when they were Safety Managers or MCR Managers and had no role in setting their pay. JA 803-804.

Bartenhagen's testimony had no probative value to Plaintiffs' claims. See Andazola v. Logan's Roadhouse, Inc., No. CV-10-S-316, 2013 WL 2355350, at *2 (N.D. Ala. May 24, 2013) (collecting cases that address the "only slightly relevant" nature of "me too" evidence). Yet, the District Court permitted Bartenhagen to

26

provide opinion testimony about the number of female employees in group leader positions at Allsteel, JA 793, and her opinion about the reason for differences in pay between her and five selected male factory managers—that she was "less valuable" as a woman than a man, JA 795-800; 809.

The District Court also permitted Plaintiffs to introduce opinion evidence from another former employee with no relationship to Plaintiffs' claims, Stephanie Stammer. Stammer was a female group leader from 2003 through 2007 and was never a Safety Manager or MCR Manager. JA 960-961; 965. She wasn't employed at the time any of Plaintiffs' claims accrued. Id. She didn't report to the same supervisors as Plaintiffs. See JA 975. She never lodged an internal complaint about pay at Allsteel. JA 963-964. Yet, the District Court permitted Stammer to testify to her personal belief that female group leaders were paid "very low" compared to male group leaders. JA 962. She also testified that her pay was not as high as other male employees' pay. JA 966.

The District Court also permitted Plaintiffs to introduce testimony from Michelle Mattingly, who, like Stammer, was a former group leader. JA 858-859. She was never an MCR Manager or Safety Manager. She didn't review Plaintiffs' performance, she had different supervisors during the recovery period, and she knew nothing about pay decisions for Plaintiffs. Id.; JA 893-894; 975. Again, the District Court allowed Mattingly to testify to her "conclusions" that certain female

27

group leaders (again, not Plaintiffs or others who held the same job title as Plaintiffs) were paid less than male group leaders. JA 871-874. She also offered her opinion that female factory managers were paid less than male factory managers. JA 873.

The District Court permitted Mattingly to testify that, in 2007, long before any of Plaintiffs' claims accrued, she lodged an internal complaint with Allsteel's MCR Department about her pay relative to some of her male co-workers. JA 873-874. Her internal complaint was limited to the pay of group leaders who had similar experience, education, and tenure in their role to Mattingly. JA 906-910; JA 1575-1576. Because Mattingly's complaint didn't address the positions, pay, or pay decisions of Plaintiffs or Plaintiffs' male comparators, it was not relevant. See Davis v. Dunn Constr. Co., Inc., 872 F. Supp. 2d 1291, 1318-19 (N.D. Ala. 2012) (concluding that the "'me too' evidence does not involve . . . common decision-makers or job positions with respect to Plaintiff's evidence, and is not close enough in time to events about which Plaintiff complains," and therefore refusing to allow Plaintiff to present this "me too" evidence); Jones v. St. Jude Med. S.C., Inc., 823 F. Supp. 2d 699, 734-35 (S.D. Ohio 2011) (concluding that Plaintiff's "me too" evidence was inadmissible because "[t]he opinions and beliefs of [the "me too" witnesses] are just that, subjective beliefs that are irrelevant and highly prejudicial, and not evidence of pretext," and further, the "me too" witnesses' "employment

Appellate Case: 16-1305    Page: 38    Date Filed: 03/25/2016 Entry ID: 4382068

actions are not related to Plaintiff's claims because they do not involve[] the same actions, reasons and circumstances"); <u>Nuskey v. Hochberg</u>, 723 F. Supp. 2d 229, 233-34 (D.D.C. 2010) (concluding that "me too" witness and the plaintiff "were not similarly situated," as the "me too" witness "had a different title, different job responsibilities, and reported to different supervisors," so the "'me too' testimony [was] not relevant and [was] excluded").

The District Court permitted Mattingly to testify that she filed a civil rights complaint and a lawsuit against Allsteel that alleged an EPA claim, as well as claims under FMLA and disability discrimination. JA 633; 877; 892-893. She testified multiple times to her "observation" that Allsteel didn't take action in response to her internal complaint or lawsuit "to remedy the pay disparity between men and women." JA 876-878; 884. She also testified to her "observation" that Allsteel didn't take her pay disparity complaint seriously. <u>Id.</u>

Then, in a true "kitchen sink" approach, the District Court permitted Plaintiffs to present evidence of "me too" witnesses who never testified by questioning various witnesses about these individuals and their pay, ultimately suggesting that they were the victims of discrimination. For example, Plaintiffs introduced evidence that Kim Dezeeuw, a female factory manager, and Valerie Nissen, a female operations manager, made less than certain male factory managers or operations managers. JA 582-596; 1392-1442. Dezeeuw and Nissen were not

Appellate Case: 16-1305     Page: 39     Date Filed: 03/25/2016 Entry ID: 4382068

Safety Mangers or MCR Managers, had no role in setting Plaintiffs' pay, and there's no evidence that they lodged pay discrimination complaints with Allsteel. See id.; 671-675. Again, this was irrelevant evidence.

In summary, the District Court permitted Plaintiffs to introduce this "me too" evidence because of two similarities: these individuals (a) were employed by Allsteel; and (b) were women. That's simply not enough to establish a "closely related" context to justify admission of this evidence. Mendelsohn, 552 U.S. at 388; Fed. R. Evid. 401.

## C. The "me too" evidence was unfairly prejudicial to Allsteel.

Allsteel was prejudiced by the Court's error. The host of post-employment reflections about pay became a central focus of Plaintiffs' efforts to prove that Allsteel willfully and intentionally violated the law. That is apparent from repeated insinuations that Allsteel paid certain women less than certain men in positions other than Plaintiffs' positions, took no action in response to Mattingly's internal complaints, took no action in response to her civil rights complaint, and took no action in response to her lawsuit. See JA 871-878; 892-893.

Allsteel did, in fact, take action in response to Mattingly's complaint. However, when Allsteel attempted to present evidence of that action to the jury to rebut Plaintiffs' charge, the District Court—without any objection by Plaintiffs'

30

counsel—interrupted the questioning of Allsteel's in-house counsel who

coordinated the response to Mattingly's charge:

Q. Following Ms. Mattingly's claim, we have heard a lot of people asked if practices were changed following Ms. Mattingly's claim. Were practices changed following Ms. Mattingly's claim?

A. No, nothing needed to be changed.

Q. How do you know that?

A. When the claim came in, the lawsuit came in, I retained an outside expert to take a look at the pay information and – because I wanted to make sure we weren't missing something so I retained them to look at that information, asked them what they needed in the way of data to give an appropriate analysis, provided them with that information, and they concluded that –

THE COURT: I am going to – I want you to stop. I want to talk to counsel. Side bar.

(Outside the presence of the jury.)

THE COURT: Where is this going?

MR. HARTY: I'm not sure what you mean, Your Honor.

THE COURT: Are you going to have her testify that some other expert looked at the data and found there was no violation, is that where this is headed?

MR. HARTY: She is going to testify that she had an expert look at the data and then as a result of that analysis she did not advise any changes which is –

\* \* \*

THE COURT: This is all hearsay, all of it.

31

MR. HARTY: There was no objection lodged, Your Honor; but I understand.

JA 910-911; 1238-1239. Allsteel's counsel explained that this evidence was not hearsay because it was offered to rebut Plaintiffs' claim that Allsteel willfully or intentionally violated equal pay laws, and "the state of mind of the company is exactly what is at issue here[.]" JA 1238-1239. The District Court also, *sua sponte*, ordered Allsteel to disclose the terms of a confidential settlement agreement reached between Allsteel and Mattingly even though Allsteel's counsel advised that the agreement contained a confidentiality provision. JA 1242-1245.

This episode highlights the prejudice to Allsteel from the District Court's wholesale admission of Plaintiffs' "me too" evidence, which resulted in a trial perhaps best described as "death by a thousand cuts." The District Court's evidentiary rulings allowed Plaintiffs to repeatedly present—again and again without virtually any limitations—evidence of numerous alleged victims of sex discrimination other than Plaintiffs, most of whom had never lodged a complaint with Allsteel. Most notably, it allowed Plaintiffs to present Mattingly's testimony, in which she emphatically insisted that Allsteel did nothing in response to her complaints of pay discrimination. The District Court then hindered Allsteel's ability to rebut the charge of willfulness by interrupting the testimony of a key Allsteel witness with evidence that was highly relevant to the willfulness question

32

and then prohibiting Allsteel's witnesses from testifying about why they believed Allsteel's pay practices were legally compliant, as discussed below.

In sum, this evidence was allowed regardless of whether the individual at issue held a similar position, worked in the same department, reported to the same decision maker, or had a temporal connection of any kind with Plaintiffs. The District Court, failing to conduct a fact-intensive inquiry and admitting this highly prejudicial evidence, abused its discretion. See Mendelsohn, 522 U.S. at 388; Goldsmith, 513 F.3d at 1286-87; Adams, 754 F.3d at 1258; Alaniz, 591 F.3d at 774. The repeated admission of this cumulative evidence unfairly prejudiced Allsteel, which was left to defend not three, but essentially a dozen claims of sex discrimination.

## III. The District Court's exclusion of evidence from Allsteel's human resources professionals and in-house counsel about their belief that Allsteel was in compliance with equal pay laws was unfairly prejudicial.

### A. Standard of review.

On appeal, this Court reviews "a trial court's evidentiary rulings under an abuse of discretion standard, giving substantial deference to a trial court's exclusion of evidence under Federal Rule of Evidence 403 so long as the trial court's exercise of discretion [does] not unfairly prevent a party from proving [its] case." Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 716 (8th Cir. 2001) (quotation marks and citation omitted) (alterations in

33

original). "The presumption under the Federal Rules of Evidence is that all relevant evidence is admissible at trial unless specifically excluded by another rule." Id. at 717 (citing Fed. R. Evid. 402). This Court in Wheeling held the district court had abused its discretion in excluding a piece of evidence because the evidence was both relevant and probative of the subjective concerns of an actor in that case, and although "the letter as a whole is highly prejudicial," the Court determined "the danger of prejudice can be minimized by admitting into evidence only the portions of the letter in which [the actor] expresses concern for the safety of the products entrusted to his company's care and control." Id. at 718.

### B. Allsteel is subject to the oversight of the OFCCP, which examined Allsteel's compliance with federal employment law.

Because Allsteel is a federal contractor, it is subject to compliance reviews by the Office of Federal Contract Compliance Programs ("OFCCP"), an office in the United States Department of Labor. JA 698-699; 1183; 1188. As a federal contractor, Allsteel is required to maintain an affirmative action plan ("Plan") and update it annually. JA 698; 1220. Allsteel is also required to track information for its Plan, like compensation data, on an annual basis. Id.; JA 1228. Ms. Rebecca Schmidt, Allsteel's in-house counsel, testified that she provides legal counsel to Allsteel to help ensure it complies with the Plan. JA 1250. Ms. Schmidt explained that due to the complexity of the OFCCP's requirements, Allsteel engages an

outside law firm to assist with data collection and statistics that go along with the Plan. Id.

Allsteel is subject to periodic audits by the OFCCP. See JA 698 & 1221. Allsteel's MCR and Law departments coordinate Allsteel's response to the OFCCP audit requests. JA 1221-1222; 1253. In these audits, the OFCCP asks Allsteel to provide data related to the Plan, including compensation data. JA 1221.

MCR Manager Cherie McClusky testified that she helped respond to an OFCCP audit that collected data about compensation paid in 2010 and 2011, during the recovery period in this case. JA 1222; 1230. The data provided to the OFCCP included the position title, pay, tenure, and sex of each position subject to review. JA 1222. Ms. Schmidt testified that the OFCCP also requires the collection and analysis of relative pay between men and women. JA 1252. McClusky testified that the OFCCP also followed up to ask for further explanation about differences in pay between members who held the same position title. JA 1222. Ms. Schmidt testified that the data the OFCCP collected was from the locations and time periods at issue in this case. JA 1253. Ms. Schmidt testified that Allsteel did not change its compensation process as the result of anything Allsteel reviewed in compiling data for the OFCCP. Id.

Appellate Case: 16-1305     Page: 45     Date Filed: 03/25/2016 Entry ID: 4382068

**C.** **The Court prohibited Allsteel from introducing evidence of the OFCCP's conclusions on its pay practices and evidence of Allsteel's witnesses' understanding of the OFCCP's conclusions.**

The District Court acknowledged that evidence of the OFCCP audit was "highly probative of whether Allsteel willfully violated the EPA and Iowa Code § 216.6A" and would therefore be allowed. JA 317. As the Court instructed the jury, a finding of willfulness required the jury to find that "Allsteel *knew* it was in violation of the Equal Pay Act [and Iowa Code section 216.6a] or . . . *acted with reckless disregard* as to the Equal Pay Act [or Iowa Code section 216.6A]." JA 377-380 (emphasis added). Similarly, to prevail on their Title VII wage-based discrimination claims, Dindinger and Loring were required to prove that Plaintiffs' sex was a "motivating factor" in determining Plaintiffs' pay. JA 381. Evidence that a governmental agency had informed Allsteel that its pay practices did not violate the law is highly probative of whether Allsteel knowingly or recklessly violated the law. Thus, this evidence has a "tendency to make a fact"—whether Allsteel willfully violated the law—"less probable than it would be without the evidence." Fed. R. Evid. 401. Because it is relevant evidence, it was admissible at trial. Fed. R. Evid. 402

Despite its understanding of the "highly probative" nature of this evidence, JA 317, the District Court held that evidence of the outcome of the audit "poses a

36

danger of confusion and undue prejudice." Id. It ruled that Allsteel could not

present testimony that "implicates what the results of the audit are," including

evidence that explained why Allsteel's management believed it was compliant with

equal pay laws. JA 857-858. This meant Allsteel could not offer its explanation as

to why its MCR Department and legal counsel—the employees charged with

ensuring Allsteel's compliance with federal laws—believed Allsteel was compliant

with the very federal anti-discrimination laws at issue. That is, they could not

testify to their belief that Allsteel was compliant with federal anti-discrimination

laws because the federal government had indicated it was compliant through the

OFCCP audits. JA 858.

Allsteel later made an offer of proof on the following points: (1) Allsteel had

not been barred from selling office furniture to the federal government; (2) the

federal government had never told Allsteel that its pay practices resulted in a

prejudicial disparity to women; (3) Allsteel had not been told by a court, a

consultant, or anyone associated with the state or federal government that Allsteel's

pay practices discriminate against women; and (4) Allsteel's MCR Managers and

in-house counsel understood that the OFCCP analyzed Allsteel's compensation

data in audits and found no violations of any laws. JA 729-730; 1186.

Had the jury heard testimony that Allsteel's MCR and legal departments

believed Allsteel was compliant with Title VII, the EPA, and Iowa law because the

37

federal government had examined Allsteel's compensation data and found no violations, it very well could have changed the jury's outcome. Instead, the jury only heard evidence that the government audited Allsteel and Allsteel employees didn't uncover anything themselves that they felt was troubling.

This was particularly prejudicial to Allsteel in light of the District Court's decision to admit the "me too" evidence Plaintiffs relied on to charge that many women—not just them—had been subjected to pay discrimination. This included evidence of Mattingly's lawsuit over pay claims that were unrelated by time, supervisor, or position to Plaintiffs. When the District Court allowed Plaintiffs to introduce this evidence, Plaintiffs opened the door and asked questions about Allsteel's response to Mattingly's contention that she was paid inequitably under the EPA. But, the District Court prohibited Allsteel from introducing crucial evidence of its reason for its belief that its pay practices were compliant with anti-discrimination laws to rebut Mattingly's testimony. One of the key reasons Allsteel believed it was not willfully or recklessly violating the EPA was because the federal government had audited its compensation data and found they did not violate any anti-discrimination law. JA 729-730; 1186. The District Court abused its discretion in excluding this evidence. See Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1139 (5th Cir. 1983) ("it would be an abuse of discretion for the district court

Appellate Case: 16-1305    Page: 48    Date Filed: 03/25/2016 Entry ID: 4382068

to wholly refuse to give any consideration whatever to evidence relating to the general practices of the defendant," including OFCCP findings).

The District Court cited precedent from this Court in support of its decision to exclude the OFCCP decision. Addendum at 14 (citing Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1105-06 (8th Cir. 1988), *overruled in part on other grounds by* Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)); Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304, 1309 (8th Cir. 1984)). This Court in Estes, however, was not facing a factual scenario like we have in this case, where the administrative findings are intended to be narrowly utilized to prove a party's intent; rather, the administrative findings were used in that case solely because the district court believed "the jury was entitled to know the results" after so much time at trial "was devoted to the EEOC investigation." Estes, 856 F.2d at 1105. Additionally, in Johnson, this Court recognized the importance of the fact that the parties were able to present "substantial evidence . . . to the jury on all matters summarized in the report," so admission of the report only served the purpose of having an expert telling the jury what conclusions it should draw. See Johnson, 734 F.2d at 1309. In the present case, the District Court wholly refused to allow Allsteel to present evidence that it believed—and had basis for believing—that its wage practices were non-discriminatory. Allsteel did not have "substantial evidence" to present on this point to negate the need for admission of the OFCCP decision.

39

The District Court expressed its concern with "admitting the opinion of an expert witness" on an issue the jury must eventually decide. Addendum at 17 (quoting <u>Johnson</u>, 734 F.2d at 1309). This illustrates the District Court's misunderstanding of the issue. The evidence was not offered to prove that the federal government found Allsteel's pay practices compliant. As Allsteel's counsel explained to the District Court, the evidence was offered to explain why Allsteel's human resources professionals believed their pay practices complied with the EPA. JA 1238-1239. This distinction could have been easily explained in an instruction to avoid any concern of prejudice the District Court may have had.

Additionally, the District Court expressed a concern that the OFCCP audit did not address comparisons between specific employees, but this concern misses the point. Allsteel's witnesses testified to the uniform compensation process it follows for its management-level employees. <u>See</u> JA 656-659; 696-697. That compensation data was audited by the OFCCP. JA 698-699; 729-730; 1186; 1221-1222; 1252-1253. The OFCCP's conclusion that no violations were found was relied on by Allsteel's human resources professionals and legal counsel. <u>See id.</u> The jury should have been permitted to consider Allsteel's belief in its compliance with the law based on this governmental audit. The District Court abused its discretion when it excluded this highly probative evidence.

40

**IV. Although Plaintiffs did not file a retaliation claim, the District Court abused its discretion by permitting Plaintiff Lisa Loring to introduce evidence that Allsteel's conduct toward her was motivated by a retaliatory animus.**

Plaintiffs never alleged any retaliation claims against Allsteel. The District Court, however, allowed Loring to introduce—over Allsteel's objection—evidence of alleged retaliatory animus by Allsteel. At trial, Plaintiffs repeatedly suggested Allsteel retaliated against Plaintiffs for filing this lawsuit. For example, Plaintiffs' counsel questioned a plant manager about the timing of Loring's performance issues:

Q.   And this lawsuit was filed in 2011.  Do you recall that?

A.   Yes.

Q.   And all of these documents that you have been shown that Allsteel kept documenting these alleged performance issues by Lisa Loring, those were all after 2011, aren't they?

JA 1030. Plaintiffs' counsel also questioned Loring's supervisor about whether Loring reported "being bullied . . . after this lawsuit was filed."  JA 1030-1031. The District Court overruled Allsteel's objection to the relevance of this line of questioning. JA 1029-1031.

Plaintiffs returned to this theme in questioning witness Douglas Baker and implied a direct connection between an evaluation of Loring's performance and the filing of this lawsuit. See JA1076-1077. The District Court again overruled

41

Allsteel's objection to the relevance of this questioning. Id. Loring also suggested that she had been the victim of retaliation. See JA 1103. In light of the repeated suggestion of retaliation—a claim that was neither exhausted nor pled—Allsteel ultimately moved for a mistrial. JA 1105-1110. The District Court denied the motion, concluding that Plaintiffs "may continue to ask questions of people who were involved in making performance ratings about the timing of those ratings in connection with the lawsuit." JA 1202.

As the foregoing demonstrates, Plaintiffs repeatedly suggested to the jury that Allsteel retaliated against Plaintiffs as a result of this lawsuit. That evidence is irrelevant and unfairly prejudicial and should have been excluded at trial. The inclusion of repeated evidence of Allsteel's alleged retaliatory animus toward Loring was highly prejudicial and created a substantial risk that the jury would find in Plaintiffs' favor on an improper basis—namely, on the basis of retaliation claims that Plaintiffs never alleged. Allowing the jury to reach a verdict based upon evidence of claims that are not even at issue created a substantial risk of unfair prejudice to Allsteel, confusion of the issues, and misleading the jury. See Scott v. City of Sioux City, Iowa, 68 F. Supp. 3d 1022, 1043 (N.D. Iowa 2014) (finding in a retaliation case, where sexual harassment was not alleged, "even to the extent that untimely incidents of harassment or retaliation provide 'background evidence' in support of a timely claim, . . . the potential for prejudice and confusion of the

42

issues—arising primarily from misdirection about what conduct of the defendants is properly at issue—substantially outweighs any probative value of [an expert's] opinions"); see also Scott v. City of Sioux City, Iowa, No. C13-4064, 2015 WL 1567253, at *2 (N.D. Iowa Apr. 6, 2015) (finding that, following the Eighth Circuit decision in Blair v. Wills, 420 F.3d 823 (8th Cir. 2005), "a trial court must be vigilant to exclude evidence that relates to dismissed claims or misconduct of a party that is irrelevant or that is only marginally relevant to remaining claims, because of the prejudicial effect of such evidence") (collecting cases).

In Blair, this Court concluded that "[t]he line of questions posed by Blair's counsel . . . emphasized irrelevant information having no bearing on the issues remaining in the case and demonstrated a persistent effort by Blair's counsel to get this information before the jury, despite repeated admonitions by the District Court," and that "the combined effect of these questions was to present to the jury an abundance of irrelevant evidence that had no bearing on the merits of the remaining claims and served only to prejudice the jury against [the defendant]." Blair, 420 F.3d at 830. "Consequently, [this Court] conclude[d] that the District Court abused its discretion by denying [the defendant's] motion for new trial on [the plaintiff's] claim." Id.

This case is similar to the circumstances in Scott and Blair, as Plaintiffs repeatedly presented evidence of Allsteel's alleged retaliatory animus despite the

Appellate Case: 16-1305     Page: 53     Date Filed: 03/25/2016 Entry ID: 4382068

fact that no retaliation claim was ever asserted against Allsteel. This evidence was irrelevant to the issues before the jury, and it was highly prejudicial. The District Court failed to curb this prejudice in any meaningful way, allowing Plaintiffs the opportunity to confuse and prejudice the jury against Allsteel. The District Court's admission of this evidence was an abuse of discretion and substantially impaired Allsteel's right to a fair trial.

> **V.    The District Court abused its discretion when it granted nearly all of the fees Plaintiffs had requested despite Plaintiffs' limited success.**

"A district court's award of attorney fees is reviewed for abuse of discretion, but its rulings on issues of law are reviewed de novo." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002) (internal citation omitted).

Plaintiffs "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish, 295 F.3d at 851 (citing Hensley, 461 U.S. at 433).[4] After arriving at the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or

---

[4] The Iowa Supreme Court has adopted "the federal analytical framework for the calculation of attorney fees under the Iowa Civil Rights Act." Dutcher v. Randall Foods, 546 N.W.2d 889, 897–98 (Iowa 1996).

44

downward[.]" <u>Hensley</u>, 461 U.S. at 434. Generally, the other considerations include the twelve <u>Johnson</u> factors,[5] with the "degree of success obtained" being the "most critical factor in determining the reasonableness of a fee award." <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) (internal quotation marks and citation omitted).

Plaintiffs sought $302,652.00 in attorneys' fees. Addendum at 30. Allsteel argued that a meaningful reduction was warranted because Plaintiffs Dindinger and Loring lost on a collective twelve years of equal pay claims that were time-barred. <u>See</u> Addendum at 35. Loring and Dindinger tried to recover on their time-barred discrete wage discrimination claims in two ways.

First, they attempted to recover for these claims under Iowa Code section 216.6A, Iowa's strict-liability wage discrimination statute, because they believed section 216.6A was retroactive. <u>Dindinger v. Allsteel, Inc.</u>, 860 N.W.2d 557, 559-560 (Iowa 2015). Allsteel disagreed and moved for summary judgment on these

---

[5] "(1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 92 n.5 (1989) (citing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717–19 (5th Cir.1974)).

Appellate Case: 16-1305      Page: 55      Date Filed: 03/25/2016 Entry ID: 4382068

claims, arguing that section 216.6A was not remedial, but a new substantive law. The District Court entered an Order that certified this purely legal issue to the Iowa Supreme Court. (Docket no. 93). In response to this certified question, the Iowa Supreme Court held: "[W]e disagree with Dindinger and Loring," and "conclude that section 216.6A applies on a prospective basis only to conduct occurring after its effective date of July 1, 2009." Dindinger, 860 N.W.2d at 564, 566. Clearly, Dindinger and Loring were not "prevailing parties" on the nine years' and three years' worth of discrete wage discrimination claims they pursued under Iowa Code section 216.6A.

Second, Loring and Dindinger tried to recover for these time-barred claims under the intentional discrimination statute, Iowa Code section 216.6, under the continuing violations theory. See Dindinger, 860 N.W.2d at 568-69. The District Court certified a second question to the Iowa Supreme Court that sought clarification on the type of recovery available for wage discrimination claims under section 216.6—another purely legal issue. (Docket no. 93). On this second certified question, the Iowa Supreme Court considered "the real question in controversy—namely, the time period for which damages are recoverable" under section 216.6. Dindinger, 860 N.W.2d at 567. Loring and Dindinger argued "they should be able to recover for the entire period they were subject to discrimination in pay, so long as at least one paycheck fell within the 300 days prior to their filing a complaint

46

with the [Iowa Civil Rights Commission]." Id. Loring and Dindinger essentially advocated that the Iowa Supreme Court adopt the continuing violation theory for intentional wage discrimination claims. Id. at 570.

The Iowa Supreme Court squarely rejected that position and the application of the continuing violations doctrine to intentional wage discrimination claims. Dindinger, 860 N.W.2d at 568. The Iowa Supreme Court concluded that for wage discrimination claims under section 216.6, "each paycheck is a discriminatory practice and a new 300-day limitations period applies to each check." Id. at 568. That is, "[s]eparate discriminatory paychecks should be evaluated separately for limitations purposes" under section 216.6. Id. at 575. This limited Dindinger and Loring's recovery to what "should have been received within the 300-day limitations period set forth in Iowa Code section 216.15(13)." Id. at 575-76. Because Dindinger and Loring didn't file their administrative charges until October 12, 2011, their recovery for wage discrimination claims under section 216.6 began on or after December 16, 2010. Subsequently, Dindinger and Loring abandoned their wage discrimination claims under Iowa Code section 216.6.

In light of the Iowa Supreme Court's answers to the certified questions of law, the District Court dismissed Plaintiffs' time-barred claims under the ICRA. See JA 168-170.

47

Despite this limitation on Plaintiffs' success, the District Court refused to reduce Plaintiffs' request for attorney fees on their time-barred claims. JA 1324-1326. This was an abuse of discretion. Given the appellate posture of the certified questions, work performed on a certified question of law is strikingly similar to work performed on pursuing and defending appeals. The Eighth Circuit has recognized a party that is unsuccessful on appeal is not a "prevailing party" and as such is not entitled to recover attorney fees for the unsuccessful appellate work. In Arneson v. Callahan, 128 F.3d 1243, 1248-49 (8th Cir. 1997), the Eighth Circuit declined to award fees for unsuccessful work performed on appeal. The Eighth Circuit held that the plaintiff "should not recover the fees and costs related to any issues that [Plaintiff] loses on appeal because [Plaintiff] would no longer be the prevailing party with respect to those issues." Id.; see also Sellers v. Peters, 624 F. Supp. 2d 1064, 1070 (E.D. Mo. 2008) ("[I]t cannot be said that plaintiff obtained full success on appeal. To award full compensation for attorneys' fees incurred on such appeal would be unreasonable."); Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1483 (9th Cir. 1992) ("Because plaintiff did not prevail on his own cross appeal, he is not entitled to attorney's fees for the time spent in connection therewith."); Watkins v. Fordice, 852 F. Supp. 542, 555 (S.D. Miss. 1994) aff'd, 49 F.3d 728 (5th Cir. 1995) ("it would hardly be reasonable to conclude that plaintiffs 'prevailed' on their appeal so as to entitle them to an award of attorneys' fees"). In

48

light of their lack of success on the certified questions of law, Plaintiffs should not be entitled to attorney fees generated for that work.

Additionally, a reduction for work on the certified questions of law is appropriate under the Hensley test. As to the first "relatedness" element, it's clear that wage discrimination claims are discrete causes of action, and a new cause of action accrues with the issuance of each alleged discriminatory paycheck. See Dindinger, 860 N.W.2d at 567-576; Iowa Code § 216.6A(2)(b). For that reason, the facts surrounding each alleged discriminatory paycheck matter. That means that the core group of facts for the time-barred claims, which would include salaries, duties, pay decisions, and pay justifications and rationales for Plaintiffs and their alleged comparators, varied from the time-barred period and the recovery period. For example, the recession that led to a change in job duties for Plaintiffs and a pay freeze was at issue during the allowable recovery period, but was not at issue during the time-barred period. And, the certified questions of law did not address the merits of the wage discrimination claims; that is, they did not address whether Dindinger or Loring were paid less than men for equal work due to their sex. Instead, they were devoted to the precise and purely legal issue of the time-barred nature of those claims.

The answer to the second Hensley question, whether Plaintiffs "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for

Appellate Case: 16-1305     Page: 59     Date Filed: 03/25/2016 Entry ID: 4382068

making a fee award," is no. <u>Hensley</u>, 461 U.S. at 434. Loring and Dindinger believed their equal pay claims were worth a combined amount of $707,495.[6] But the jury only returned a verdict that allowed for recovery of the combined amount of $40,000 on their strict-liability wage discrimination claims. <u>See</u> JA 427-432. In other words, Loring and Dindinger recovered only six percent of what they set out to recover under section 216.6A. Surely, this result cannot be deemed a "satisfactory basis" for a fee award under <u>Hensley</u>. The award of attorney fees by the District Court was an abuse of discretion.

> **VI.   The District Court abused its discretion when it granted Plaintiffs' motion for costs.**

This Court reviews a district court's decision to grant or deny a motion for costs for abuse of discretion. <u>See</u> <u>Richmond v. Southwire Co.</u>, 980 F.2d 518, 520 (8th Cir. 1992). The District Court abused its discretion when it awarded Plaintiffs an additional $7,506.18 in costs and expenses other than those expressly allowed by 28 U.S.C. § 1920. The District Court awarded Plaintiffs' requests for costs for RealTime trial transcript feed, for redundant deposition transcripts and video depositions of the same witnesses, and for Westlaw research fees, all of which were unsupported by a sufficient legal basis to justify cost-shifting in this case.

When awarding costs under 28 U.S.C. § 1920, the District Court accepted Plaintiffs' generalized contention that the work performed during trial warranted

---

[6] <u>See</u> District Court docket nos. 114-2 through 114-4.

Appellate Case: 16-1305     Page: 60     Date Filed: 03/25/2016 Entry ID: 4382068

the taxation of $4,444.00 in RealTime trial transcript fees. Addendum at 51. This is merely a restatement that Plaintiffs wanted the convenience of a RealTime transcript to assist at the trial. This is an insufficient legal basis to authorize this expense. See McDowell v. Safeway Stores, Inc., 758 F.2d 1293, 1294 (8th Cir. 1985) (declining to award costs for trial transcript and noting that, before awarding such costs, trial court "should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case"); McIlveen v. Stone Container Corp., 910 F.2d 1581, 1584 (7th Cir. 1990) (affirming trial court's denial of costs for trial transcript where only purpose of obtaining transcript was to verify witness credibility).

Plaintiffs also requested fees for printed deposition transcripts as well as electronically-recorded video depositions for five witnesses. Because the video recordings are redundant to the transcripts, and Plaintiffs never introduced the video recordings at trial, the costs of the recordings—$968.80—should have been denied by the District Court. See E.E.O.C. v. CRST Van Expedited, Inc., No. 07-CV-95-LRR, 2010 WL 520564, at *5 (N.D. Iowa Feb. 9, 2010), *vacated on other grounds*, 679 F.3d 657 (8th Cir. 2012).

Finally, Westlaw fees are not recoverable as a cost or expense under a fee-shifting statute, as this Court has made clear. "[C]omputer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be

51

independently taxed as an item of cost." Leftwich v. Harris-Stowe State Coll., 702 F.2d 686, 695 (8th Cir. 1983). This Court's decision in UnitedHealth Group Inc. Shareholder Derivative Litig., 631 F.3d 913, 918 (8th Cir. 2011), authorized the recovery of online research fees when they are "being reimbursed pursuant to a negotiated settlement," but this holding did not disturb the well-settled precedent in Leftwich that Westlaw fees are not recoverable under a fee-shifting statute. The District Court's award of $2,093.38 in Westlaw expenses should be reversed.

## CONCLUSION

The case should be reversed and remanded for a new trial.

Respectfully submitted,

By: /s/ Frances M. Haas
Frank Harty
Frances M. Haas
NYEMASTER GOODE, P.C.
700 Walnut Street, Ste. 1600
Des Moines, IA 50309-3899
Telephone: 515-283-3100
Facsimile: 515-283-8045
Email: fharty@nyemaster.com
fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANT/
APPELLANT

52

# CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  X   this brief contains 10,304 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

\_\_\_\_\_ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(1)(6) because:

  X   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 Point Times New Roman, *or*

\_\_\_\_\_ this brief has been prepared in a monospaced typeface using *[state name and version of word processing program]* with *[state number of characters per inch and name of type style].*

                                         \_\_\_\_\_ /s/ Frances M. Haas \_\_\_\_\_

Appellate Case: 16-1305    Page: 63    Date Filed: 03/25/2016 Entry ID: 4382068

## CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A

Appellant hereby certifies that the brief filed herein has been scanned for viruses and that the brief is virus-free.

Appellant further certifies that the electronic version of the brief has been generated by printing to PDF from the original word processing file.

<u>     /s/ Frances M. Haas       </u>

Appellate Case: 16-1305     Page: 64     Date Filed: 03/25/2016 Entry ID: 4382068

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on March 25, 2016, I electronically filed the foregoing with the Clerk of Court for the United States Court of appeals Eighth Circuit by using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service on those participants will be accomplished by the CM/ECF system.

Ann E. Brown
Ann C. Gronlund
Brad J. Brady
BRADY & O'SHEA, P.C.
2735 1st Avenue SE
Cedar Rapids, IA 52402
Phone: (319) 866-9277
Fax: (319) 866-9280
ABrown@BradyPrestonBrown.com
Agronlund@BradyPrestonBrown.com
BBrady@BradyPrestonBrown.com
ATTORNEYS FOR PLAINTIFFS/APPELLEES

/s/ Frances M. Haas

Appellate Case: 16-1305     Page: 65     Date Filed: 03/25/2016 Entry ID: 4382068